IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JEFFREY S. HALFTER
56 Tracy Lane
East Islip, NY 11730      CIVIL ACTION

     Docket No.:

*Plaintiff,*

**JURY TRIAL DEMANDED**

- against -

JOHNSON CONTROLS, INC.
507 E Michigan Street
Milwaukee, WI 53202

*Defendant.*

-------------------------------------------------------------------X

## CIVIL ACTION COMPLAINT

Plaintiff, Jeffrey S. Halfter (*hereinafter* "Plaintiff"), by and through his undersigned counsel, hereby avers as follows on behalf of himself:

### I. Introduction

1. Plaintiff has initiated this action, to redress violations by Johnson Controls, Inc. (*hereinafter* "Defendant") of the New York Labor Laws, N.Y. Labor §§ 190, *et. seq.*, for breach of contract, and for the commission of common-law promissory estoppel and unjust enrichment. Plaintiff alleges herein that Defendant has continually perpetuated a fraudulent and unlawful payroll practice of ***retroactively*** reducing ***earned*** wages and commissions of Account Executives (who are salespeople).

### II. JURISDICTION AND VENUE

2. Plaintiff resides in and is a citizen of New York.

3. Upon information and belief, Defendant is incorporated under the laws of

Wisconsin with headquarters and/or principal place of business in Wisconsin, rendering it a citizen of Wisconsin.

4. This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of New York; Defendant is a citizen Wisconsin; and the amount in controversy exceeds $75,000.

5. This Court may properly maintain personal jurisdiction over Defendant because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

6. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### III.    Parties

7. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

8. Plaintiff Jeffrey S. Halfter is an adult who resides at 56 Tracy Lane, East Islip, New York 11730.

9. Defendant is a corporation which provides equipment and supplies to commercial buildings, in particular HVAC, security, fire and equipment systems.

10. Defendant has locations throughout the United States, including in the State of New York. Plaintiff is assigned to Defendant's Long Island or Farmingdale office as Major Account Executive or commissioned salesperson.

11. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV. Factual Background

12. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

13. Plaintiff is a commissioned salesperson who sells Security systems for Defendant to commercial enterprises. Plaintiff has been employed as a Security Major Account Executive since September 2011. Plaintiff is an extremely successful salesperson for Defendant. At all relevant times, Plaintiff sold equipment and projects to customers in New York. He is assigned to the Farmingdale, New York branch.

14. The process of selling security equipment and systems involves Plaintiff identifying potential clients, developing relationships with those clients, preparing written proposals, and working with clients to procure sales. The equipment and projects are generally large in scope, taking months to complete. Throughout his career with Defendant, Plaintiff has regularly collected payments due on projects throughout the process, including at the conclusion of the project.

15. The payment of commissions to Plaintiff is governed by a written incentive plan. Plaintiff received a written incentive plan during each year of his employment with Defendant. The one at issue, entitled: "Incentive Plan – HVAC Smart Building, Complex and Account

Sales" is effective October 1 and expires September 31 of the following year, following Defendant's fiscal year. The Incentive Plan at issue herein in the FY 2023 plan which is effective October 1, 2022 through September 31, 2023 ("the 2023 Plan[1]").

16. The 2023 Plan sets forth in detail the process by which Plaintiff's commissions are earned and paid. Plaintiff's commissions are based upon a percentage of profit or margin earned on each sale.

17. The 2023 plan provides that Plaintiff is entitled to payment of approximately 50% of the total commission at the time of booking. A sale is 'booked' when an internal contract number is assigned by the Defendant. This initial payment is made thirty (30) days after the sale is booked. The remaining commission is paid to Plaintiff over the life of the project as Defendant's customers make additional payments toward the total amount due. The final commission is paid when the job transfers to warranty and is paid in full.

18. Defendant did not modify or alter the 2023 Plan. The 2023 Plan was still in place at the close of Defendant's FY2023.

19. Many of Plaintiff's sales involve large projects that take several months to complete or more. Because of this, the 2023 Plan (as with numerous plans before it) provides that commissions for booked but incomplete projects are paid out in full when the project is complete and goes to warranty, even if those payments are paid in subsequent fiscal years.

20. During the 2023 Plan Year, and for more than a dozen years prior, Defendant provided Plaintiff with a "dashboard" and spreadsheets on a monthly basis that tracked commissions for ongoing projects that are not completed during the plan year. Those commissions due to the Plaintiff at project completion were listed by Defendant as "estimated

---

[1] Plaintiff acknowledges that in a breach of contract claim, the contract at issue is to be filed at the time of filing the Complaint. Given the potentially proprietary nature of the contract at issue, Plaintiff has not included the contract at this time, but is willing to amend his filing.

4

remaining incentive" and are paid one month after the completed job goes to warranty, no matter whether the job was complete in the fiscal year in which it was sold or subsequent fiscal years.

21. By way of example, under the 2023 Plan (and all previous Incentive Plans going back at least a dozen years), if Plaintiff booked a job on July 1, 2023 for which he was owed a $10,000 commission, Johnson Controls paid Plaintiff 50% of his total commission within 30 days of the issuance of a contract number for the booking (the "booked job"). If the booked job did not complete and paid in full until July 1, 2024, Plaintiff would be entitled to the payment of the remaining 50% of his commission within 30 days of July 1, 2024. According to the 2023 Plan, Plaintiff need only be employed at the time of project completion to receive his due and owing commission.

22. Plaintiff booked millions of dollars in sales in sales in 2023. In conformity with the 2023 Plan, Johnson Controls paid Plaintiff his initial 50 percent commission 30 days after the time of each booked job.

23. Several of Plaintiff's booked jobs were completed and went to warranty during the 2023 Plan year. In conformity with the Plan, Defendant paid Plaintiff his due and owing commission (minus any chargebacks) when the project went to warranty.

24. At the conclusion of the 2023 Plan Year, Plaintiff carried over approximately $140,334.78 in commissions due for booked but incomplete projects. These are projects which Defendant was continuing work, billing their customer and accepting payment per the contract, which were procured and secured by Plaintiff for Defendant's benefit. Defendant provided Plaintiff with a spreadsheet that tracked those commissions. This information allowed Plaintiff to track those projects, determine when they went to warranty, and anticipate when he would receive payment for his earned but unpaid commissions. **(Exhibit 1).** Whether the project

completed in 2024, according to the 2023 Plan and all prior plans in the fiscal years in which this work was booked, Plaintiff need only be employed at the time of project completion to receive payment of the commission. The 2023 Plan was not amended or revised during the FY2023.

25. Because Defendant erased the electronic dashboard access that would have allowed him to determine how much commission he was due, his manager sent him an email in November 2023 entitled "Commissions Owed (Backlog)" and stated in the body of the email, "This is your backlog commissions still owed to you from FY 23. This amount is taken from the SPM tool using the date: Sept 2023" and ended the email "JESUS CHRIST!!" taken only as surprise and dismay that Defendant owed Plaintiff so much commission and yet was refusing to pay him his earned commissions.

26. In November 2023, after the close of the 2023 fiscal year, Defendant introduced its 2024 Incentive Plan "the 2024 Plan". The 2024 Plan contains terms for the payment of commissions that is far different from the 2023 Plan and all previous plans provided to Plaintiff on new jobs to be secured by Defendant's salespersons who sell HVAC, fire and security equipment and installation. Under the 2024 Plan, all commissions are paid at the time of contract booking, irrespective of when the project is completed and goes to warranty. Under the 2024 Plan, salespersons earn commission based upon when the customer pays its first payment after the job is booked. Under the 2024 Plan, the sooner the customer pays, the higher the commission rate to the salesperson, regardless of when the project is completed. The 2024 Plan is vastly different from the 2023 Plan and provides Plaintiff and other salespersons less commission than they received for the same volume of sales under other plans. Plaintiff and other salespersons income will vastly change under the 2024 Plan; Defendant will continue to

6

Case 2:25-cv-00424-PP   Filed 02/13/24   Page 6 of 14   Document 1

charge its customers the same, and Plaintiff and the salespersons will make less for the same or more work.

27. In addition to changing the terms for future commission payments on new jobs, Defendant also informed Plaintiff that it would not pay his earned but unpaid commissions (commissions that were booked in 2023 but incomplete as of November 1, 2023) which were listed as "estimated remaining incentive." In other words, Defendant stole Plaintiff's earned but unpaid commissions for ongoing projects that did not close during the 2023 plan year. While stealing Plaintiff's earned commissions, Defendant made it clear that it still intended to collect the outstanding payments due by its customers on all of those jobs, and in several instances required Plaintiff to be involved in securing those payments but refused to pay Plaintiff's earned and due commission.

28. Defendant continues to receive payment for Plaintiff's ongoing projects, and has informed Plaintiff that it will keep Plaintiff's earned 50% commission going forward for all of Plaintiff's 2023 (and prior) sales. Defendant has announced an anticipatory repudiation for all of Plaintiff's, and other similarly situated salespersons, earned but unpaid commissions on jobs which it is currently collecting money from its customers but have not yet gone to project completion or warranty.

29. Defendant has stolen Plaintiff's commissions since announcing its 2024 Plan, and Defendant has informed Plaintiff that it intends to steal ALL of Plaintiff's future earned but unpaid commissions from the 2023 Plan Year. The total amount of earned but unpaid commissions from projects that have not yet completed exceeds $140,334.78.

30. Very shortly after implementing the 2024 Plan, Defendant removed Plaintiff and other salespersons' access to information and spreadsheets regarding their 2023 sales that were

booked but not completed during the 2023 Plan Year. Defendant deleted all of the pages contained on Plaintiff and other salespersons Dashboard which previously showed Plaintiff's sold jobs, earned commissions and other incentives due.

31. Plaintiff's manager and other salespersons managers throughout the country decried the refusal by Defendant to pay salespersons earned commissions but indicated that their hands were tied and they could not help them. Further, many managers were outraged for Plaintiff and other salespersons at the amount of commissions which were stolen from the salespersons. Many managers took the step of printing salespersons estimated remaining incentive reports when Defendant erased the salespersons dashboards so they had proof of how much they were due.

32. Defendant has also denied Plaintiff access to information and spreadsheets that allow him to determine when his 2023 Plan Year sales go to warranty, making it extremely difficult for Plaintiff to determine precisely when Defendant steals each of his earned but unpaid commissions for ongoing projects.

33. Thus, Plaintiff seeks to recover his earned but unpaid commissions for projects that he booked prior to FY 2024 for which Defendant and for which Defendant has illegally retained for itself. Plaintiff also seeks to recover his earned but unpaid commissions that he booked in 2023 that have not yet gone to warranty.

34. Defendant retroactively removed Plaintiff's earned commissions <u>without notice</u> to Plaintiff. Defendant retroactively changed the terms of Plaintiff's compensation plan without notice to him or the other salespersons. Pursuant to New York Labor Law § 193, whenever changes are made to pay or benefits, "the employer shall, as soon as practicable, but in each case before any increased deduction is made on the employee's behalf, <u>notify the employee prior to</u>

the implementation of the change." (Emphasis added). Plaintiff was only notified after changes to his compensation was made. And such changes were required to be notified in writing prior to implementation, which never occurred. *See* NYLL § 193(b).

35. And finally, Defendant so pervasively violated Labor Laws in New York, it completely refused to even comply with § 195 of the Labor Law. In particular, Defendant was statutorily required to:

> (1) "Provide . . . employees" . . . "in writing" . . . "a notice containing the following information: the rate or rates of pay and basis thereof;"
>
> (2) "Obtain from the employee a signed and dated written acknowledgement" of Defendant's "notice" of pay structure;
>
> (3) "Notify his or her employees in writing of any changes to the information" related to pay "at least seven calendar days prior the time of such changes;" and
>
> (4) Retain all signed and executed acknowledgement of employee compensation structures and new notices executed by employees of any changes for no less than six years.

36. Defendant on the other hand made **no objective effort** to comply with any aspects of NY State Law(s). Defendant did not provide to Plaintiff and other salespersons written notice of changes, sign any new policies on commission changes, and they blanketly changed whatever they wanted retroactively. Defendant's entire payroll scheme is illegal throughout New York.

37. Under NYLL § 191-c, when a commissioned salesperson is not properly paid all owed commissions, that commissioned salesperson "shall" be automatically entitled to "double damages," "attorney's fees," "court costs," and "disbursements." This of course is in addition to other penalties available (such as $50 per-day notice violations).

38. In New York, the statute of limitations (or look-back period) for wage violations under the Labor Law is 6 years from date of lawsuit filing. *See* NYLL § 198(3).

39. Plaintiffs is entitled to unpaid wages, liquidated damages, attorney's fees, interest, costs, and other applicable damages.

## Count I
## Violations of New York Labor Law (at §§ 190 *et. seq.*)
### (Failure to properly pay earned commissions)

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff is owed "wages," a term that is inclusive of "commissions."

42. Defendant has engaged in uniform and undeniable nationwide practices that are unlawful.

43. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

44. Plaintiff is a commission salesman as defined under New York Labor Law § 190.

45. Plaintiff procured millions of dollars in sales for Defendant during the 2023 Plan Year.

46. Plaintiff is owed commissions for equipment and projects that were booked prior to October 1, 2023 when Defendant announced its FY2024 Incentive Plan and stand to be completed or have been completed after October 1, 2023. Defendant has failed and continues to fail to pay those due and owing commissions as its customers make payment on those projects and/or when they go to warranty.

47. Defendant has also informed Plaintiff that it will not pay due and owing commissions for equipment and projects that Plaintiff booked prior to October 1, 2023 that have not yet gone to warranty. This is a retroactive change to Plaintiff's due and owing wages.

48. The payment of commissions are past due pursuant to the terms of the 2023 Plan; and Defendant has announced an anticipatory repudiation of its obligation to pay Plaintiff

commissions as they become due under the 2023 Plan, and indicated even when the commissions become due they will refuse to pay them to Plaintiff. This is a retroactive change to its incentive/commission plan.

49. Defendant is in violation of New York Labor Law §190 and 193, and Plaintiff is entitled to payment of his due and owing commissions, as well as all other forms of relief including but not limited to liquidated damages of double the amount owing, costs and actual attorney fees.

## Count II
## Breach of Contract
### (Failure to properly pay earned commissions)

50. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51. Each and every time Plaintiff received a commission statement prior to the close of FY2023 set commission rates were specified. Plaintiffs operated under the promise of receipt of such commissions.

52. Without notice, Plaintiff received less commissions than assured in preceding commission statement (after having already performed work) also known as estimated remaining incentive.

53. FY2023 closed without any changes being made to the FY2023 Incentive Plan, meaning the terms of that plan were still in effect when FY2024 began. Plaintiff is due commission under the FY2023 plan which Defendant has refused and continues to refuse to pay.

54. These actions, in addition to constituting Labor Law violations, also constitute breach of contract.

## Count III
## Unjust Enrichment
### (Failure to properly pay earned commissions)

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Plaintiff worked to his detriment expecting set commissions and compensation. Defendant should be disgorged of its ill-retained benefits of work performed by Plaintiff.

57. This claim is specifically pleaded in the alternative as an equitable claim in the event that any legal claim cannot – for any reason – be established.

## Count IV
## Promissory Estoppel

58. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

59. Plaintiff procured sales from various customers throughout New York in reliance on the promises of Defendant that he would be paid commission on the total profit margin of the job sold. Defendant presented Plaintiff with a commission plan that induced him to book jobs for security equipment and installation with the understanding that Plaintiff would be paid commission in parts, at the time of the booking the job and the remainder at the completion of the job. Plaintiff relied on this promise when using his efforts to make sales.

60. Plaintiff relied on those promises to his detriment.

61. Plaintiff has been prejudiced because Defendant has refused to pay his commissions for jobs which have been completed and paid in full, even though it knows that Plaintiff was the procuring cause of those jobs. Defendant has accepted the money from its customers on the job, but stolen the due and owing commission from the Plaintiff.

62. Plaintiff has been prejudiced because Defendant has refused to pay him commissions for jobs that have gone to warranty, and will go to warranty, even though it knows

that Plaintiff was the procuring cause of those purchase orders and relied on its representations that he would be paid commission when the job was complete and went to warranty.

63. Plaintiff has suffered damages as a result of this prejudice including but not limited to loss of earnings, loss of commission and loss of future compensation.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain their illegal policy, practice or custom of defrauding commissioned Account Executives and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff for all compensation to which he has have been deprived in the last 6 years;

C. Plaintiff is to be awarded liquidated or other penalty damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendant for willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff; and

G. Plaintiff is entitled to receive a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Adam C. Lease*
Adam C. Lease, Esquire
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
*Attorneys for Plaintiff*

**THE SHARP FIRM, PLLC**

/s/ *Heidi T. Sharp*
Heidi T. Sharp (P69641)
43260 Garfield Road, Suite 280
Clinton Township, MI 48038
(586) 226-2627
heidi@sharpfirmlaw.com
*Attorneys for Plaintiff*
*Pro Hac Vice Admission Pending*

Date: February 13, 2024